IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TYRONE PRICE,<br><br>   Petitioner,<br><br>v.<br><br>C. CARTER, *Warden*<br><br>   Respondent. | Civil Action No.: SAG-24-1444 |

## MEMORANDUM OPINION

Tyrone Price, a federal inmate recently confined at Federal Correctional Institution-Cumberland, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1, which he supplemented, ECF No. 4, seeking restoration of good conduct credits revoked as a result of a disciplinary hearing. ECF No. 1 at 7. Price also seeks compensation of $40 for having completed the Residential Drug Abuse Program ("RDAP") and asserts his First Amendment rights were violated. *Id.* Warden Carter's ("Respondent") Court-ordered response seeks dismissal of the petition, or summary judgment, because Price failed to exhaust his administrative remedies, received all process due in his disciplinary hearing, and his claims for compensation for having completed RDAP and regarding a violation of his First Amendment right to receive mail are not cognizable under § 2241. ECF No. 10. Despite being notified of his opportunity to reply, ECF No. 12, Price has not opposed the motion. Having reviewed the petition, motion, and related filings, the Court finds that no hearing is necessary. Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Local R. 105.6. For the reasons set forth below, the Court will grant Respondent's motion to dismiss, or in the alternative for summary judgment and dismiss the petition for writ of habeas corpus.

## BACKGROUND

Price is serving an aggregated one-hundred-and-forty-month term of confinement. ECF No. 10-1, at 3, ¶ 5; ECF No. 10-1 at 9-11.  His current projected release date, via Good Conduct Time Release, is August 8, 2025. ECF No. 10-1, at 3, ¶ 5; ECF No. 10-1 at 8.

On September 25, 2023, Unit Manager Holler was reviewing emails when he noticed an email sent on September 1, 2023 to Price from carmexwanda@gmail.com. ECF No. 10-1 at 3, ¶ 6; ECF No. 10-1 at 13.  Holler reported that that email address belonged to a third party email service that allows inmates to send text messages directly to phone numbers the inmate places on a list. *Id*.  The email to Price explained the process as follows:

> HOW TO SEND/RECEIVE MESSAGES: The process for sending messages has changed. Up until now we have asked that you put a 10-digit phone number in the subject line. We have decided that it might be better to make it to where you use a word in the subject line rather than the 10-digit phone number. When you send messages you can put the word (the one assigned to the phone number) in the subject line rather than the phone number. To respond to emails as a free member you must start a NEW email every time with the word in the subject line. All other messages you send will be ignored.

*Id*.  Additionally, the email showed a number of telephone numbers that Price had placed on his messaging app. ECF No. 10-1 at 4, ¶ 6; ECF No. 10-1 at 13, 24-26.

As a result of the review of the email, Holler wrote an incident report (#3831210) charging Price with violating Code 299 (disruptive conduct—high) most like code 296 (mail abuse, disrupt monitoring). ECF No. 10-1 at 4, ¶ 7; ECF No. 10-1 at 13.  Price was provided a copy of the incident report on September 25, 2023. ECF No. 10-1 at 4, ¶ 8; ECF No. 10-1 at 13.

The following day, a hearing was held before the Unit Discipline Committee ("UDC") which Price attended. ECF No. 10-1 at 4, ¶ 9; ECF No. 10-1 at 14.  Because of the severity of the charge, the UDC referred the matter to the DHO for a hearing. *Id*. That same day Price received and signed for a copy of his inmate rights regarding the DHO hearing. ECF No. 10-1 at 4, ¶ 10;

ECF No. 10-1 at 16-17.  He did not request to have a staff representative or to call witnesses at the DHO hearing. ECF No. 10-1 at 16.

On September 29, 2023, the DHO conducted the hearing. ECF No. 10-1 at 4, ¶ 1; ECF No. 10-1 at 19.  The DHO confirmed that Price had received a written copy of the incident report and reviewed Price's due process rights, confirming that Price did not have any documentary evidence to present and that he did not request any witnesses or a staff representative. *Id*. The DHO read the incident report to Price and provided him an opportunity to give a statement. ECF No. 10-1 at 4, ¶ 12; ECF No. 10-1 at 19.  Price responded that "The messages were approved by the bop." *Id*.

After considering the written account of the events as described in the incident report, Price's denial of the charges and his statement offered at the hearing, and a copy of the email, the DHO found that Price did not commit the prohibited act as charged but instead committed the prohibited act of conduct disruptive to the security of the institution most like mail abuse (attempted), a Code 299A most like Code 296. ECF No. 10-1 at 5, ¶¶ 13-14; ECF No. 10-1 at 20-26.  In explaining the finding, the DHO explained that he placed greater weight on the officer's written account that Price attempted to use his TRULINCS account to send email to individuals by using an intermediary email address. ECF No. 10-1 at 5, ¶ 14; ECF No. 10-1 at 21. The DHO did not find that Price's position that the BOP approved the third party text service excused him from the prohibited act. ECF No. 10-1 at 5, ¶ 15; ECF No. 10-1 at 21. The DHO noted that the inmate handbook explains Code 296 as "Use of the mail for abuses other than criminal activity which circumvents mail monitoring procedures (e.g., . . . directing others to send, sending, or receiving a letter of mail through unauthorized means, . . . sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person." ECF No. 10-1 at 5, ¶ 15; ECF No. 10-1 at 21.  Additionally, the DHO "explained that similarly misusing

3

TRULINCS, as here by using or attempting/preparing to email the intermediary email address for the purpose of forwarding to an unregistered email account constituted the prohibited act because the intended recipient's identity was masked." *Id*.

As a result of the findings, the DHO sanctioned Price to 27 days loss of GCT and 90 days loss of email privileges. ECF No. 10-1 at 5, ¶ 16; ECF No. 10-1 at 22. On January 7, 2024, the DHO prepared a written report of the findings and sanctions, which was delivered to Price on January 9, 2024. ECF No. 10-1 at 5, ¶ 17; ECF No. 10-1 at 22. Price was advised of his right to appeal through the Administrative Remedy Procedure. *Id.*

Price contends that his rights were violated during the disciplinary hearing because Unit Manger Holler, who wrote the disciplinary report, attended the disciplinary hearing. ECF No. 4 at 3. Price also provided the declaration of inmate Demond Proctor averring that Holler attended the hearing. ECF No. 4-3 at 1. Price claims that he argued to the DHO that Holler could not attend the hearing because it violated his right to due process and rules regarding the conduct of disciplinary hearings. ECF No. 4 at 3. Price also states that the hearing was held in Holler's office. *Id*; ECF No. 4-3 at 1. Price seemingly contends that the foregoing prevented the DHO from being an impartial decision maker. ECF No. 4 at 3.

Additionally, Price contends that he does not have control over what email is sent to him. *Id*. at 4. He claims he was accused of receiving an email but was not accused of sending an email to anyone. *Id*. He states that BOP staff approved the emails for Price's contact list and as such he could not have misused the service or violated any policies. *Id*. Additionally, he baldly asserts that his First Amendment right to receive mail was violated. *Id*. He also seeks to be compensated financially for completing RDAP. *Id*.

4

Price filed an administrative remedy appeal regarding the decision of the DHO. ECF No. 10-2, at 4, ¶ 7. That appeal, received by the Mid-Atlantic Regional Office on February 3, 2024, was rejected on February 5, 2024 as untimely. *Id*. at 4, ¶¶ 8-9; ECF No. 1-1 at 1. Price claims that he deposited his appeal in the prison mail in a timely fashion and the "prison mailbox" rule should be applied to his administrative appeal, so that it should have been deemed timely. ECF No. 1 at 3. Further, Price explains that he was prevented from timely filing an appeal of the rejection of his claim because Holler refused to provide him with the BP-11 form. ECF No. 4-1 at 1. Price did not resubmit his appeal explaining its untimeliness. ECF No. 10-2 at 3, ¶ 10.

**LEGAL STANDARD**

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 12, *Rules on Motion Attacking Sentence Under Section § 2255*; Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (§ 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

5

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## DISCUSSION

It is well-established that a petitioner seeking judicial review of agency actions must first have exhausted available remedies within the agency prior to filing suit. *See McKart v. United States*, 395 U.S. 185, 193-95 (1969). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence," that is, "to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Petitioners seeking relief under § 2241

are subject to this exhaustion requirement. *See Braden v. 30 Judicial Cir. Ct.*, 410 U.S. 484, 489-92 (1973); *McClung v. Shearin*, 90 Fed. Appx. 444, 445 (4th Cir. 2004) (Petitioner must exhaust administrative remedies prior to filing § 2241 petition seeking restoration of good conduct credits); *Asare v. United States Parole Commission*, 2 F.3d 540, 544 (4th Cir. 1993) (challenging BOP projected release date requires exhaustion). "Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required a petitioner to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus." *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010). "Exhaustion of administrative remedies may not be required where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Id.* (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3rd Cir. 1988).

The Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, which conserves judicial resources at the same time, *McCarthy*, 503 U.S. at 145–46.

Here the record evidence demonstrates that Price failed to complete the administrative process regarding his disciplinary hearing. Price contends that under the prison mailbox rule he timely filed the appeal of the disciplinary finding. But the BOP's Administrative Remedy Procedure provides that "IF accepted, a Request to appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. 542.18; *see also* BOP Program Statement 1330.18, Administrative Remedy Program, at Section 12, p. 9 (Jan. 6, 2014) available at https://www.bop.gov/policy/progstat/1330_018.pdf (last visited Nov. 25, 2024). As such, there is simply no indication that Price is entitled to benefit of the prison mailbox rule and therefore the Court cannot say that his initial appeal was timely.

Nevertheless, Price claims that his effort to have the denial of his appeal reviewed was thwarted because, among other reasons, prison staff refused to provide him the necessary form to appeal the dismissal. Therefore, on this record, the Court cannot say that the administrative process was available to Price. As such, the Court declines to dismiss the Petition as unexhausted and will instead turn to the merits of Price's due process claim regarding the conduct of his disciplinary proceedings.

## ANALYSIS

A.   **Due Process claim**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592.

Here, Price received advanced notice of the hearing, he waived his right to representation or to present evidence at the hearing, and the DHO's written decision was based on evidence presented at the hearing. As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5.

Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-

72. As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. Here, the DHO provided a detailed explanation of why the email exchange amounted to a violation of the rule prohibiting mail tampering in attempt to conceal recipients. Price's explanation, that the email was approved by the BOP, was rejected by the DHO. A hearing officer who is present for a hearing and has the ability to observe the evidence is in the position to make determinations regarding weight and credibility.

Price's claim that he did not receive an impartial DHO because the unit manager who authored the report was present at the hearing is unavailing. "'Adjudicators are entitled to a presumption of honesty and integrity [ ], and thus the constitutional standard for impermissible bias is high [ ].'" *Nicholson v. Carter*, DLB-23-380, 2024 WL 895120 at *6 (D. Md. Feb. 29, 2024) (citations omitted). When a petitioner disputes a DHO's decision to give the officer's written account of the incident greater weight, the petitioner must show "a level of bias that made fair judgment impossible" and "[t]here must be some substantial countervailing reason to conclude that a decisionmaker is actually biased." *Id*. Price presents no such allegation. Rather Price simply points to the reporting officer's presence at the hearing as evidence that he was not given an impartial decision maker. But the reporting officer did not conduct the hearing, make the decision to find Price guilty, or write the hearing report. In the same way, the DHO did not prepare the incident report and was not a party to or otherwise involved in the incident. Rather the DHO simply conducted the hearing, weighed the evidence, and concluded that Price committed a prohibited act. There is simply no evidence that the DHO was partial or improperly influenced by the reporting officer's presence at the hearing. Price's complaint regarding Holler's mere presence

at his hearing does not demonstrate that he did not receive an impartial or fair hearing. Mere violation of an internal rule, if one occurred, would not establish a constitutional claim.

Finally, turning to the "some evidence" standard, the record provides ample evidence to support the DHO's conclusion that Price violated prison rules. The "some evidence" standard is "an exceedingly lenient standard, requiring only a modicum of evidence." *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quotations and citation omitted). In determining whether that standard was satisfied, a court is not required to examine the entire record, make an independent assessment of witnesses, or re-weigh the evidence. *Hill*, 472 U.S. at 455. If the decision of the DHO has "some basis in fact," it is "sufficient to meet the requirements imposed by the Due Process Clause." *Id*. at 456.

Here, there is some basis in fact for the DHO's decision. The DHO was presented with the email, the written incident report, and Price's statement. The DHO weighed the evidence and gave greater weight to the officer's written testimony. Contrary to Price's argument that he had no control over what those in the outside world sent him and that the BOP had approved the emails, the DHO explained why Price's argument was not supported. Price was not found in violation of the rules simply because he received the email but rather for attempting to circumvent the monitoring procedures set forth by the BOP. ECF 10-1 at 21. The DHO found that Price committed the attempted prohibited act in part because the email "show[ed] numerous phone numbers that Price ha[d] placed on his messaging app…[in] violation of the TRULINCS and [which] allow[ed] Price to circumvent the email process." ECF No. 10-1 at 21. The email to Price made clear that Price had already added numerous phone numbers to the messaging app. *Id*.; ECF No. 10-1 at 24-26. As such, the DHO found Price had attempted to use his TRULINCS account to send communications to people via an intermediary address, which posed a serious threat to the

ability of staff to monitor communications. ECF No. 10-1 at 22.  The DHO based that decision on the fact that Price had prepared to exchange communications with individuals through the intermediary email which is prohibited.  *Id.* at 20-21;24-26.  Finally, the DHO found that "Utilizing or attempting/preparing to email the intermediary email address Carmexwanda@gmail.com for the purpose of forwarding to an unregistered email account constituted the prohibited act whereas, the intended recipient's identity was masked." *Id*. at 21. Based on this record, the DHO's determination was grounded in "some evidence" and met the due process requirements.  Accordingly, the motion for summary judgment is granted as to this claim.

**B.      Remaining Claims**

Price's claims regarding denial of his First Amendment right and the request for compensation for completion of RDAP are not cognizable in this case.  A § 2241 petition attacks the manner in which a sentence is executed.  *See* 28 U.S.C. § 2241(a), *see also Jones v. Hendrix*, 599 U.S. 465, 475 (2023) (§ 2241 relief is available when prisoner "might wish to argue that he is being detained in a place or manner not authorized by the sentence . . . .").  Respondent maintains that Price has chosen the wrong vehicle in which to raise claims regarding his email and compensation for completion of RDAP.  Whether a habeas petitioner may raise claims regarding the conditions of his confinement is a matter that has been left unsettled.

The Supreme Court left open the question of whether matters concerning "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners" may be addressed via a petition for writ of habeas corpus.  *Ziglar v. Abassi*, 582 U.S. 120, 144-45 (2017) (differentiating claims of "individual instances of discrimination . . . which due to their very nature are difficult to address except by way of damages actions after the fact."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and

unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.").

The Fourth Circuit has stated in unpublished decisions that claims challenging conditions of confinement cannot be brought in habeas petitions. *See, e.g., Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (per curiam) (finding "[t]his case presents no basis to deviate from our previous holdings" and concluding that inmate's claim to have the BOP reconsider where he was housed is not one that would fall within the scope of habeas); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017) (per curiam) (holding that an inmate's challenge to his transfer to a maximum-security facility was "not a cognizable § 2241 claim, because th[e] petition challenge[d] the conditions of his confinement, not its fact or duration").

Additionally, this District Court and others have held that conditions of confinement claims regarding email, mail, telephone use, and other privileges are not cognizable under § 2241. *See Head v. Beard*, DLB-22-189, 2023 WL 2023217 at *3 (D. Md. Feb. 15, 2023) (loss of email privileges is not cognizable under § 2241; collecting cases); *Bostick v. Weber*, DKC-21-2507, 2022 WL 622231 at *2–3 (D. Md. Mar. 2, 2022) (holding conditions of confinement and retaliation claims should be raised in separate civil rights action); *Jones v. Smith*, 993 F.2d 1537, 1537 (D. Md. May 28, 1993) (same); *Manuel v. Stewart*, DKC-13-2043, 2014 WL 4094788, n. 2 (D. Md. Aug. 18, 2014) (allegation of staff tampering with inmate's outgoing mail in violation of the First Amendment was a challenge to a condition of confinement); *White v. Leu*, 2023 WL 1783770 at *4 (E.D. Va. Feb. 6, 2023) (inmate claims regarding 30 days of disciplinary segregation, six months loss of commissary privileges, or two months loss of phone privileges are not cognizable under § 2241). Unlike the broad-reaching policy decisions that affect hundreds of prisoners, which the Supreme Court has indicated may be examined under habeas law, the actions complained of in this

case are specific to Price and impact only him. Accordingly, Price's claims regarding his email privileges and compensation for participation in RDAP are dismissed without prejudice.

## CONCLUSION

Having found no basis for federal habeas corpus relief, the petition shall be denied and dismissed by separate Order which follows.

<u>December 4, 2024</u>                  _____/s/_____
Date                                                     Stephanie A. Gallagher
                                                                 United States District Judge